## CHARLES P. MOORMAN HOME FOR WOMEN et al. v. UNITED STATES.

### No. 1150.

District Court, W. D. Kentucky, at Louisville.
June 19, 1930.

Lawrence S. Leopold, of Louisville, Ky., for plaintiffs.

T. J. Sparks, U. S. Atty., and Claude Hudgins, Asst. U. S. Atty., both of Louisville, Ky., and C. M. Charest, Gen. Counsel, Bureau Internal Revenue, and P. E. Miller, Sp. Atty., Bureau Internal Revenue, both of Washington, D. C.

DAWSON, District Judge.

In this action a refund of income and profits taxes is sought for the calendar years 1918, 1919, 1920, 1922, and 1924, alleged to have been wrongfully collected by the United States. The facts out of which this litigation grows are as follows:

Charles P. Moorman, a wealthy citizen of Louisville, Ky., died on the 13th day of February, 1917, leaving a will, the material clauses of which are as follows:

"Thirteenth. I direct my executor with the approval of the Committee aforesaid to divide all the rest and residue of my estate real and personal into two equal parts and I devise and bequeath one of such parts to The Louisville Trust Company in trust for my son Charles P. Moorman, Jr., for and during his natural life subject to the following limitations; so much of the income accruing from this portion as may be necessary shall be used by said trustee under the direction of the Committee for the proper and comfortable support of my son Charles and after his death the principal and unused income of this share shall be disposed of as in this will hereinafter directed.

"I devise and bequeath the other of said two equal parts to The Louisville Trust Company in trust for my granddaughter, Lucy Elizabeth Moorman for and during her natural life subject to the following limitations; so much of the income from said portion as may be necessary shall be used by the trustee

under the direction of said Committee for the proper and liberal support of my said granddaughter and her family should she have one. I direct that the income from this portion not devoted to the support of my granddaughter as aforesaid shall be accumulated by the Trustee and held as the property and estate of my said granddaughter until such accumulations shall have reached the amount of two hundred thousand dollars. When my granddaughter arrives at the age of twenty five years said two hundred thousand dollars shall be paid to her as her absolute estate but in the event the accumulations do not amount to such sum at said time, then the trustee shall continue to apply the surplus income as aforesaid until said amount shall have been accumulated at which time it shall be paid to her. So long as my granddaughter lives she shall receive such portion of the income of this trust as is required for her liberal support and that of her family; if any as hereinbefore provided.

"Should my said granddaughter die at any time leaving issue surviving her, this trust shall continue until the youngest of such issue living at her death attains the age of 21 years, and so much of the income from this portion of my estate as the Committee may deem proper shall be used by the trustee for support and education of such issue until the time above designated when this trust shall cease and the principal and accumulated income of this share of my estate shall be distributed per stirpes, among such issue.

"Should my granddaughter die leaving no issue surviving her or should such issue die without issue surviving before attaining the age of 21 years, then the share left for my said granddaughter in this will shall be employed for the same uses and purposes as the share of my son Charles P. Moorman Jr. and pass under the will as said share passes."

"Fifteenth. Upon the death of my son Charles or upon the death of my granddaughter Lucy Elizabeth Moorman without issue surviving her and attaining the age of twenty-one years, as provided in clause thirteen above (which ever shall first occur) I direct the Committee hereinbefore created to organize under the laws of the State of Kentucky a corporation to be known as the 'Charles P. Moorman home for Women.'

"Said Committee shall constitute the Board of Directors or governing body of said corporation and in the event of the death, resignation, or inability of any of said parties to act, the remaining directors shall fill such vacancy with like powers in the successor or successors.

"Said Board shall continue—in the management and direction of the corporation and its affairs until such time as the members thereof shall have formulated a plan for the perpetual conduct of the institution and the corporation. I give to the members of the Board the uttermost latitude in deciding the method by which the affairs of the charity hereby created shall be ultimately directed and controlled with no limit as to the time in which their judgment is to be exercised.

"The corporation above mentioned shall purchase property in or near Louisville, Kentucky convenient to some car line and improve and equip the same so as to provide a home for as many poor dependent aged women as the income of the estate will take care of and maintain.

"The cost of the property with all improvement and equipment as well as additions may be taken from the principal of my estate all charges for maintenance will be met out of the income.

"The extent of the work undertaken and the magnitude of the property acquired will depend on the amount of the estate available to such use. The portion out of which my son Charles is provided for must accrue to said home. The portion out of which my granddaughter is provided for will result to such object only on the contingency stated in clause Thirteen of this will.

"My purpose is to endow and dedicate to humanity a home for indigent old women, who otherwise would be forced to spend their declining years in want and misery. This purpose I have cherished for many years.

"I have been fortunate in that from a boyhood of poverty, I have attained to considerable wealth, my wife is dead, my only living child has been and must always be sadly afflicted physically with no need for anything save the means of his physical comfort, and providing for him kindly attention and these I have herein secured to him. My granddaughter is given by this will all that I consider should be the portion of any girl, or woman, and should she leave issue it is provided for. At the same time, I have amply provided for her mother with whom she lives.

"I feel that Louisville and Jefferson County where I have lived the greater part of my life and which has been the scene of my activities and success deserve the generous disposition I hold for them.

"The details of working out the greatest good for the greatest number along the lines herein set out is left to those entrusted with the management and direction of the Home.

"The Home as established and always to be conducted shall be non-sectarian, extending to all the class mentioned its wholesome and protecting influence, and with only the condition that the beneficiaries shall be white and for not less than five years prior to admission to the Home shall have been residents of Jefferson County, Kentucky.

"Upon the organization of the corporation as above directed, The Louisville Trust Company as trustee will continue to hold the entire estate with powers of investment and reinvestment, and subject to the conditions as to the direction and approval of the Committee as hereinbefore set out, will pay over to the corporation for purposes indicated all of the net income not required in the execution of the trusts imposed by Clause Thirteen of this Will.

"When the members of the Board of the Corporation organized as herein provided have formulated and carried into full execution the plan for the perpetual conduct of the charity as hereby created then The Louisville Trust Company, Trustee, will transfer and convey to said corporation all of my estate not hereinbefore otherwise disposed of in fee simple.

"I do not want this charitable use to fail. If my plan shall be held for any reason insufficient or illegal, then a court of equity sitting in and for Jefferson County, Kentucky shall appoint trustees to carry out the purposes set forth herein. Action in such respect to be instituted and maintained by The Louisville Trust Company as Trustee, under this will, or in event of failure so to do by any citizen of Jefferson County, Kentucky."

The executor, with the approval of the committee, divided the estate as directed in clause 13 of the will, and thereafter the Louisville Trust Company held one-half of the estate in trust for Charles P. Moorman, Jr., as directed in clause 13. Charles P. Moorman, Jr., died on July 3, 1925. The estate left in trust for him each year up to his death produced considerably more income than was used for his support by the trustee under the direction of the committee, as directed in the will. For the years 1918, 1919, and 1920, the books of the trustee showed this surplus at the end of each year as unexpended income of the Charles P. Moorman, Jr., trust.

On July 20, 1921, and practically four years before the death of Charles P. Moorman, Jr., the Charles P. Moorman Home for Women was organized as a Kentucky corporation, to carry out the charitable purposes expressed in the fifteenth clause of the will, and shortly thereafter the unexpended income for each of the years 1918, 1919, and 1920 was entered upon the books of the trust company, which was also the executor under the will, to the credit of the Charles P. Moorman Home for Women, and similar entries were made of the unexpended income for each of the years 1921, 1922, 1923, and 1924. The record does not show that the corporation took any steps to carry out the purposes of its organization until after the death of Charles P. Moorman, Jr.

In making its income tax return for each of the years 1918, 1919, 1920, 1922, and 1924, the Louisville Trust Company, as trustee for Charles P. Moorman, Jr., reported as income received by that trust for the use and benefit of Charles P. Moorman, Jr., only that part of the total income of the trust which was expended for his use and benefit during the respective years. The unexpended income for each of those years was treated and reported as having been permanently set aside to the Charles P. Moorman Home for Women, and therefore exempt from taxation under the Revenue Acts applicable to the respective years. The Commissioner rejected this contention, and required the entire income derived from the Charles P. Moorman, Jr., trust for each of the years to be reported as income received for his use and benefit. The action of the Commissioner resulted in the collection of the taxes for which refund is sought in this case.

For the years 1918, 1919, and 1920 the applicable statute is the Revenue Act of 1918, for the year 1922, the Revenue Act of 1921, and for the year 1924, the Revenue Act of 1924; and the right of the plaintiff to recover depends upon the proper construction of the applicable provisions of these acts and of clauses 13 and 15 of the Moorman will.

By section 219 of each of the acts referred to, trust estates are made taxable entities, and the trustee is charged with the duty of making the return and paying the tax. The pertinent provisions of each of those acts follow:

Revenue Act of 1918:

"Sec. 219(b). * * *

"The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except that there shall also be allowed as a

deduction (in lieu of the deduction authorized by paragraph (11) of subdivision (a) of section 214) any part of the gross income which, pursuant to the terms of the will or deed creating the trust, is during the taxable year paid to or permanently set aside for the United States, any State, Territory, or political subdivision thereof, or the District of Columbia, or any corporation organized and operated exclusively for religious, charitable, scientific or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual. * * * ". 40 Stat. 1071.

Revenue Act of 1921:

"Sec. 214(a). That in computing net income there shall be allowed as deductions: * * *

"(11). Contributions or gifts made within the taxable year to or for the use of * * *

"(B) any corporation, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual. * * * " 42 Stat. 239.

"Sec. 219 * * * (b). * * *

"The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except that (in lieu of the deduction authorized by paragraph (11) of subdivision (a) of section 214) there shall also be allowed as a deduction without limitation, any part of the gross income which, pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in paragraph (11) of subdivision (a) of section 214. * * * " 42 Stat. 246.

Revenue Act of 1924:

"Sec. 219 * * * (b). * * *

"The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except that—

"(1) There shall be allowed as a deduction (in lieu of the deduction authorized by paragraph (10) of subdivision (a) of section 214) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in paragraph (10) of subdivision (a) of section 214, or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes. * * * " 43 Stat. 275 (26 USCA § 960 note).

Paragraph (10) of subdivision (a) of section 214 of the Revenue Act of 1924 (26 USCA § 955(a) (10), so far as applicable to the issue in this case, is in substantially the same language as paragraph (11) of subdivision (a) of section 214 of the Revenue Act of 1921.

The quoted language of section 219 of the act of 1918 makes it clear that the trust income, to be exempt from taxation as a charitable contribution, must be paid to or permanently set aside during the taxable year for a corporation organized and operated exclusively for charitable purposes, and that such payment or permanent setting aside must be pursuant to the terms of the instrument creating the trust. In other words, the instrument creating the trust must make it clear that it was the intention of the creator of the trust that such income should be paid during the taxable year to the charitable corporation or permanently set aside to it during such taxable year. The statute makes it very clear that it was not the intention of Congress to make the taxability of the income for any taxable year depend upon the discretion of the trustee in paying or permanently setting aside the income of the trust to the charitable purpose during the taxable year, but to depend solely upon the provisions of the instrument creating the trust.

As I view the law, if the instrument creating the trust clearly provides that the income of the trust as it accrues each taxable year shall be paid or permanently set aside to the charitable corporation, it will be exempt from taxation for each of the taxable years, notwithstanding the trustee may have failed or neglected either to pay it or permanently set it aside. On the other hand, if it appears from the instrument creating the trust that it was not the intention of the creator that any part of the income of the trust should be paid to or permanently set aside for the charitable corporation during the taxable year, the action of the trustee in paying or setting aside same during that year would not operate to exempt it from taxation.

Section 219(b) of the Revenue Act of 1921, while it enlarges the exemptions granted to trusts by the corresponding section of the act of 1918, for the purposes of this case is not materially different, and what has just

been said with reference to section 219(b) of the act of 1918 applies with equal force to the corresponding section of the Act of 1921.

Section 219(b) of the Revenue Act of 1924 grants the exemption, not only in cases where the income has been paid to or permanently set aside for the charitable purpose during the taxable year, but also in those cases where the income received during the taxable year is to be used exclusively for the charitable purpose. As in the acts of 1918 and 1921, however, the determining factor is the instrument creating the trust, and not the discretion of the trustee. Therefore, under the 1924 act, unless it appears from the instrument creating the trust that the income for which exemption is sought is set aside in the instrument creating the trust exclusively for a charitable purpose, or under the terms of that instrument is to be paid during the taxable year or permanently set aside during that year for the charitable purpose, it is not exempt.

Therefore I think we may disregard the manner in which the trustee handled on its books the income of the trust left at the end of each year after Charles P. Moorman, Jr., had been provided for. The vital question is: How did the creator of the trust, Charles P. Moorman, Sr., intend that this surplus income should be held and used during the life of Charles P. Moorman, Jr.? By clause 13 of the will it is plainly apparent that it was the intention of the testator that the entire income of the Charles P. Moorman, Jr., trust, if necessary, should be used for the proper and comfortable support of the cestui que trust. It was not the intention of the testator that the income of the trust for any particular year could be used for the support of the cestui que trust for that year only, but his rights under the trust were cumulative. If in any one year it was deemed necessary by the committee named in the will to expend more money for the proper and comfortable support and care of the cestui que trust than the income of the trust fund for that year, it was not only the right but the clear duty of the trustee to supply the deficiency from any surplus which may have accumulated in prior years. The income of the Charles P. Moorman, Jr., trust which the testator intended to pass on to the charitable purpose named in clause 15 was not the surplus income left at the end of each calendar year, but simply the surplus of that income left unexpended at the death of Charles P. Moorman, Jr. Until that time the first and exclusive charge

upon that income was the proper and comfortable support of the testator's afflicted son, and the trustee under the will held it for that purpose exclusively. At the end of any calendar year the trustee could not know what demands the committee would make on the income of the trust during the succeeding year, nor could it be foretold with certainty what the income of the succeeding year would be, and no doubt it was knowledge of this fact which prompted the creator of the trust to make available for the support of his afflicted son the entire income of the trust so long as the son should live.

It will be observed that by clause 15 of the will the testator directed that the committee named in the will should organize a corporation to be known as the "Charles P. Moorman Home for Women," "upon the death of my son Charles," etc. If it had been the intention of the testator that the surplus income of the trust at the end of each year should be paid to the Charles P. Moorman Home for Women provided for in clause 15 of the will, or permanently set aside to it, there would have been no reason for him to direct that the corporation should be organized only upon the death of his son, or upon the happening of another contingency not material in this case. I doubt if it would be important under the law that the corporation was not in existence during the years 1918, 1919, and 1920, nor operating during 1922 and 1924, if it had been the intention of the testator that the surplus income at the end of each year should be irrevocably set aside for its uses. In such a case I am of the opinion that the phrase "organized and operated," used in the statutes, would properly be construed to refer to the corporate powers of the corporation, rather than to a requirement that the corporation should actually be in existence and operating during the taxable year. The fact, however, that the testator provided for the organization of the corporation after the death of his son tends to emphasize the purpose expressed in clause 13, to charge all of the income of the trust during the life of the son with his support and care.

Suppose, before the death of Charles, Lucy Elizabeth Moorman had died without issue surviving her and attaining the age of twenty-one years, and afterwards the Charles P. Moorman Home for Women had been organized and put into operation and her one-half of the estate had been turned over to the Home, as directed in the will. In that event, would the trustee have had the right to turn over to that Home the unexpended income

of the Charles P. Moorman, Jr., trust for any calendar year during his life? It seems to me for it to have done so in such a situation would have been a clear violation of clause 13 of the will. Its payment to the Home would have placed it beyond the reach of the trustee, had its expenditure become necessary for the support and care of Charles P. Moorman, Jr. If the trustee was without right to pay such surplus income over to an organized and operating Charles P. Moorman Home for Women during the life of Charles P. Moorman, Jr., it seems to me necessarily to follow that the trustee was without power, by book entries, to finally and completely divest itself, as trustee for Charles P. Moorman, Jr., of such surplus income, and vest it in the Charles P. Moorman Home for Women, or to hold it solely and exclusively for the benefit of such Home, when organized and operating.

I therefore conclude that under the will the entire income of the Charles P. Moorman, Jr., trust was received and held by the trustee during each of the years in question as income for the use and benefit of Charles P. Moorman, Jr., and that such income was subject to taxation.

The cases of Lederer v. Stockton, 260 U. S. 3, 43 S. Ct. 5, 67 L. Ed. 99, and Bowers, Collector, v. Slocum (C. C. A.) 20 F.(2d) 350, relied upon by the plaintiffs, seem to me clearly distinguishable from the case at bar.

It follows from what has been said that I am of the opinion that the plaintiffs are not entitled to recover, and counsel may prepare judgment conforming to the views herein expressed and submit same for entry.