*Decision will be entered under Rule 50.*

THE MICHIGAN TRUST COMPANY, ROY C. FULLER, MAURICE A. LAMBIE AND EMIL TYDEN, CO-EXECUTORS OF THE ESTATE OF RICHARD B. MESSER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42513. Promulgated January 31, 1933.

*Oscar E. Waer, Esq.,* for the petitioners.
*Lewis S. Pendleton, Esq.,* for the respondent.

558

560

OPINION.

MATTHEWS: Two issues are presented: (1) Whether the respondent erred in his determination of the values of certain stocks owned by the decedent; and (2) whether the respondent erred in refusing to deduct from the gross estate as a bequest to charity the value of the remainder interest in one-third of the residuary estate.

1. It is the petitioners' contention that the values of the stocks are limited to the prices fixed by the trust agreements, and that even if the respondent is not bound to recognize such prices the evidence establishes that these prices did in fact represent the fair market values of the respective stocks at the date of the decedent's death.

The material portions of the trust agreements are quoted in the findings. Under their provisions if any stockholder wishes to dispose

of his holdings, or if the representatives of any deceased stockholder desire to sell their stock, but not otherwise, the remaining stockholders are to be given an opportunity to purchase the stock at the price agreed upon before it shall be offered to others. If the stock is offered and no sale is made to any remaining stockholder during a period of three months after notice of desire to sell, there is no prohibition against the sale of the stock to anyone other than a stockholder at any price which the holder may be able to get. It will be seen that in case of the death of any stockholder his representatives are under no obligation to offer his stock to the remaining stockholders, except that *if they desire to sell* they can not sell to an outsider until after the expiration of the period specified within which the optionees have the right to purchase the stock at the agreed price.

We are of the opinion that the instant case is distinguishable from the case of *Wilson* v. *Bowers*, 51 Fed. (2d) 261; affd., 57 Fed. (2d) 682, which is cited and relied upon by the petitioners. In that case it was held that the value of shares of corporate stock to be included in the gross estate could not exceed the amount fixed by purchase options which are irrevocable so far as the estate was concerned. The contract involved therein was specifically enforceable by the optionees, it being expressly provided that within a stated period the two remaining stockholders should have the right to purchase the stock from the estate at the agreed price, so that the executors of the estate took the stock *cum onere*, that is, with the burden of the option, which option was irrevocable on the part of the executors. In other words, the executors had no choice in the *Wilson* case but to offer the stock successively to the two optionees, and not until both had refused the offer was the burden removed and the stock sellable at its market price. As stated above, the facts of the instant case are materially different, and we therefore hold that the values of the stocks are not limited to the price fixed by the trust agreements. In this connection reference is made to the case of *City Bank Farmers Trust Co., Executor*, 23 B. T. A. 663, where it was said:

> Although the parties can restrict the sale price of the stock as between themselves they cannot, by such a contract, restrict the right of the Government to collect taxes upon the actual value of the stock.

In that case a contract was signed by all the stockholders of a closely held corporation in which the decedent owned stock which provided that any stockholder desiring to sell his stock should first offer it for sale to the other stockholders at a price represented by the " book

value " of the shares. It was held that the evidence was insufficient to establish that the Commissioner's valuation was erroneous.

It remains to consider whether the petitioners in this proceeding have proved that the values of the stocks at the date of the decedent's death were less than the values determined by the respondent. It is to be remembered that the companies are all close corporations and there are no " quoted " market values. It was testified that at the time of the hearing the stock owned by the decedent was still held by his executors and that no actual sales of stock had ever been made under the trust agreements. The prices of the stocks for the ensuing year were fixed between January 1 and March 1. The supplemental agreements fixing the prices were entered into on January 12, 1926, and the decedent died on December 29, 1926, or exactly fifty weeks thereafter. It may be supposed that the prices varied from year to year. For example, in the original trust agreements executed August 28, 1923, the stocks were listed at the respective values of $35, $70 and $200 per share, and for the year 1926 they were listed at $25, $80 and $250 per share. The petitioners must have recognized that the prices fixed by the trust agreements did not represent the actual values of the stocks, because in the estate tax return filed by them the stocks were valued at $20, $80 and $400 per share instead of at $25, $80 and $250 per share.

Apart from the provisions of the trust agreements, the only evidence relative to the values of the stocks is contained in the depositions of Maurice A. Lambie, A. E. Johnson and C. W. Clarke. Lambie is one of the petitioners and each of these witnesses owned stock in one or more of the corporations. They testified that the prices were based upon the assets and earnings of the respective corporations, and that in their opinion these prices represented the fair market values of the stocks; in the words of Johnson, " they tried to arrive at as fair a price as possible, because the stockholders were all represented and no one knew which one would drop out or which one might have to sell." No evidence was introduced with respect to the assets of the corporations, their earnings, the dividends paid, etc. As was said in *American Chemical Paint Co.*, 25 B. T. A. 1208, 1213:

We must assume that the petitioner produced all of the evidence which was available or at least all that it cared to present. Since the evidence produced is not reasonably convincing of the value contended for, the loss must fall upon the petitioner. Cf. *Burnet* v. *Houston*, 283 U. S. 223; *Jankowski* v. *Commissioner*, 56 Fed. (2d) 1006.

Upon the entire record, we must hold that the petitioners have introduced insufficient evidence to overcome the presumption of correctness of the respondent's determination of the values of the

stocks, and the respondent's determination is, therefore, approved. See *Estate of Marcus D. Fairchild*, 9 B. T. A. 416; *Melville Hanscom, Executor*, 24 B. T. A. 173; *Emma C. Hopkins, Executrix*, 24 B. T. A. 805; *Uncasville Mfg. Co.* v. *Commissioner*, 55 Fed. (2d) 893, affirming, in part, 19 B. T. A. 920.

2. With respect to the issue whether the value of the remainder interest in the trust created for the decedent's daughter constitutes an allowable deduction as a bequest to charity, we are of the opinion that the respondent erred in failing to allow the deduction claimed. It is not questioned that the institutions to which bequests were made by the decedent are corporations which come under the provisions of the act.

The petitioners claim a deduction in the sum of $4,770.70, representing the value of the remainder interest in the trust created for Walter Frost, and the respondent allowed $4,670.71 on account of this item. No point is made by the petitioners that this amount should be larger, but it is earnestly contended that the respondent erred in wholly disallowing the deduction claimed in the sum of $38,994.65, representing the value of the remainder interest in the trust created for Grace Anderson.

In the 30-day letter dated August 17, 1929, the respondent states:

No deduction is made under this heading of the remainder value of one-third of the residue for the reason that the life tenant is given the right to invade the principal and therefore the charitable bequests have no ascertainable value as of the date of decedent's death.

In the case of *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, the decedent bequeathed the residue of his estate to his wife for life, with authority to use from the principal any sum " that may be necessary to suitably maintain her in as much comfort as she now enjoys." After the death of the wife there were bequests in trust for admitted charities. It was held that inasmuch as the principal that could be used was only so much as might be necessary to continue the comfort then enjoyed, the standard was fixed in fact and capable of being stated in definite terms of money, and that the provision for the maintenance of the wife did not make the gifts to charity so uncertain as to prevent their deduction from gross income in computing estate tax. As Mr. Justice Holmes so aptly expressed it, " there was no uncertainty appreciably greater than the general uncertainty that attends human affairs." See also *Hartford-Connecticut Trust Co.* v. *Eaton*, 36 Fed. (2d) 710; *First Nat. Bank of Birmingham* v. *Snead*, 24 Fed. (2d) 186; *Herron* v. *Heiner*, 24 Fed. (2d) 745; *Mercantile Trust Co., Executor*, 13 B. T. A. 85.

The facts of the case last cited are very similar to those of the instant case. After reviewing several cases, this Board held:

It is clear that the testator intended that his widow should have every possible comfort and that her maintenance and support should be the first consideration, but his intention is also clearly and unmistakably expressed with respect to the charitable institutions therein provided for. There is no doubt but that he considered the amount of his estate sufficient to yield his wife ample means for her proper maintenance and that his further provision for her was merely a protective measure. It was not designed to permit her, at her election, to defeat the terms of the will and deprive the charitable institutions of the bequests made to them. * * *

This decision was affirmed by the Circuit Court of Appeals for the Eighth Circuit in 43 Fed. (2d) 39.

In the instant case the evidence disclosed that the decedent's estate amounted to more than $300,000 and that the income accruing to the decedent's daughter, Grace Anderson, from her one-third of the estate had run about $6,000 per year. Lambie, one of the executors of the decedent's will, further testified that he had known the decedent's daughter, Grace Anderson, for twenty-five years and was acquainted with her husband and knew their mode of living and their financial circumstances. He stated that in his opinion the amount of $6,000 would be sufficient to maintain the decedent's daughter in the condition in which she had been living for the past eight or ten years. It may be noted that the will provides that "in the event that such a net income, together with her individual means, is insufficient to provide for her support, care and maintenance," etc. It was testified that Grace Anderson's husband was a prosperous business man, having a sufficient income to maintain his family, and also having a very substantial net worth. Grace Anderson was fifty-four years of age at the time of the decedent's death and had only one child, a married daughter, Josephine Anderson Todd, who is also provided for in the decedent's will.

Under these circumstances we conclude that the legacies to the charitable institutions named in the will became vested upon the death of the testator. We, therefore, hold that the present values of these bequests at the date of the death of the testator are deductible from the gross estate in determining the net estate subject to taxation, and that the respondent erred in failing to allow the deduction claimed in the amount of $38,994.65.

*Judgment will be entered under Rule 50.*