*Decision will be entered under Rule 50.*

HELEN G. BONFILS, THOMAS L. BONFILS, CHARLES A. BONFILS, F. W. BONFILS, J. B. GRANT, AND THE DENVER NATIONAL BANK, EXECUTORS OF THE ESTATE OF F. G. BONFILS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91501. Promulgated December 8, 1939.

*James B. Grant, Esq.*, and *Stephen H. Hart, Esq.*, for the petitioners. *R. P. Hertzog, Esq.*, and *L. C. Mitchell, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The sole question at issue is whether or not capital gains, which, by the terms of the decedent's will, automatically became part of the corpus of a trust, which corpus ultimately was to be paid to a charitable corporation but might be invaded if necessary for the purpose of paying testamentary annuities, are subject to income tax.

The respondent's position is that, so long as invasion of corpus is theoretically possible, the capital gains from sales of corpus securities are not permanently set aside for, or to be used exclusively for, charitable purposes, as provided in section 162 (a) of the Revenue Act of 1934.[1]

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o) or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit.

The petitioners contend that even though there is a theoretical possibility of invasion, yet there is no reasonable probability thereof and accordingly the capital gains are "permanently set aside" and hence not taxable to the petitioners, as executors of the decedent's estate.

The respondent cites a number of cases to support his position, none of which is precisely parallel in fact and law. In our opinion the basic principle underlying the decision in *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, suggests the proper approach to the interpretation of the phrase "permanently set aside." *Hartford-Connecticut Trust Co.* v. *Eaton*, 36 Fed. (2d) 710. In the *Ithaca Trust Co.* case, Mr. Justice Holmes said:

> The case presents two questions, the first of which is whether the provision for the maintenance of the wife made the gifts to charity so uncertain that the deduction of the amount of those gifts from the gross estate under Sec. 403 (a) (3), supra, in order to ascertain the estate tax, cannot be allowed. *Humes* v. *United States*, 276 U. S. 487, 494, 72 L. Ed. 667, 670, 48 Sup. Ct. Rep. 347. This we are of opinion must be answered in the negative. The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.

See also *United States* v. *Provident Trust Co.*, 291 U. S. 272; *City Bank Farmers Trust Co.* v. *United States*, 74 Fed. (2d) 692.

Though a deduction is a matter of legislative grace and the proof must bring it clearly within the statutory provisions, it is a matter not only of judicial inclination but also of legislative policy to encourage gifts and transfers to charitable institutions. *Old Colony Trust Co.* v. *Commissioner*, 301 U. S. 379, and many other decisions of the courts and the Board.

Thus, whether or not the income of the estate was "permanently set aside" calls for the application of the test of reason, not the blind adherence to a dictionary definition of words. The question of the reasonable probability that any part of the capital gains would be required to pay annuities is a factual one. In many cases we have held that deductions for charitable purposes are allowable when the income from the corpus is sufficient to provide for precedent bequests or annuities. *Benjamin B. Sanderson, Executor*, 18 B. T. A. 221; *Marion M. Jackson, Executor*, 18 B. T. A. 875; *Boston Safe Deposit & Trust Co. et al., Executors*, 21 B. T. A. 394; *Michigan Trust Co. et al., Executors*, 27 B. T. A. 556. The cases upholding this view relate to estate taxes and involve other statutes, but we believe there is a parallelism in principle when income tax is involved. *Hartford-*

*Connecticut Trust Co.* v. *Eaton, supra.* Moreover, income taxes are annual payments based on successive foundations of fact which may vary with the years. Opportunity is thus afforded for adjustment for errors of judgment. The question here relates solely to capital gains which automatically became part of corpus. They were not subject to the ordinary uses as income.

Turning to the facts of record, we find that the present fair market value of the corpus is approximately $8,000,000. Over $3,600,000 of that amount is in Government and municipal bonds and about $164,-000 in cash. In 1934 the petitioners received over $165,000 in ordinary income and about $320,000 in capital gains. In 1935 the corresponding receipts were about $162,000 and over $15,000, respectively. Deductions of slightly over $400 in 1934 and over $15,000 in 1935 were allowed. The trustees' average net income from 1934 to 1938, inclusive, was well over $500,000.

In 1934 the annuities paid amounted to $62,035.48 and in 1935 to $90,150. In 1936 they were $110,600, while in 1937 and 1938 they were $110,200. It is obvious from the terms of the will that the annuity charge which the trustees must pay will constantly decrease, and in view of the advanced age of many of the annuitants and the minimum age of 48 years, such a diminution will be relatively rapid.

The income received in 1938 from Government, municipal, and, to a small extent, from corporate bonds, was within $1,655.63 of meeting the annuity charge. The small deficiency was met out of dividends on stocks, which amounted to $412,131.44.

Faced with these facts and figures, we can conclude only that the probability that the capital gains realized in 1934 and 1935 would ever be required to pay any part of the annuities was so remote that it should be held that such gains were permanently set aside in the taxable years for charitable purposes as contemplated by section 162 (a) of the Revenue Act of 1934. *Lederer* v. *Stockton*, 260 U. S. 3. Hence, they are allowable deductions from the petitioners' gross income.

*Boston Safe Deposit & Trust Co.* v. *Commissioner*, 66 Fed. (2d) 179, affirming 26 B. T. A. 486, relied on by respondent, is not authority contrary to the above conclusion when the facts in that case are considered. That the factual situation here is more favorable to petitioners is conceded by respondent on brief. In the cited case the margin separating the actual payments from possible invasion of corpus was so narrow as to make it impossible to say that possibility of invasion was remote. Moreover, the margin was growing less. In that case it might fairly have been said that the possibility of invasion appeared to be dangerously imminent.

*Decision will be entered under Rule 50.*