# UNION TRUST CO. OF PITTSBURGH v. COMMISSIONER OF INTERNAL REVENUE.

## No. 7026.

Circuit Court of Appeals, Third Circuit.

Sept. 27, 1940.

Rehearing Denied Nov. 7, 1940.

the economists, the Congress, and the United States Supreme Court have not been altogether in accord on the tax meaning of "income". The bewilderment has been augmented by a constitutional and practical necessity of interpreting each other's theories. Our category and therefore obligation is simpler. We need consider only the opinions of our highest court.

■ To the tax collector, all receipts are income.[1] An exception to even his enthusiasm used to but no longer prevails. It is amusingly put by an English writer: "Pure acts of grace and favor, the outcome of goodness of heart, perhaps done at times of rejoicing should not be taxed." T. Hallat Fry on Income Tax, p. 110. The economists' definition is, as might be supposed, inclusive—"the money value of the net accretion in one's economic power between two points of time", Seligman, The Income Tax (2nd Ed.1914), Lectures at Columbia University (1931), Magill. The interpretation of both the Congress and the courts has been narrower, and as narrower more complicated, than either of the other two. The courts, unless Congress orders otherwise, fall back upon old friend "ordinary meaning", Merchants' Loan & Trust Co. v. Smietanka, 1921, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305 (on some rather illusory theory that the state legislatures who ratified the 16th Amendment had some idea of an "ordinary meaning" for such an economic abstraction). Congress has usually tried to follow the same conception. Sometimes, however, the exigencies of the revenue cause encroachment and the difficulties of the courts multiply.

The principal case lies in the field of an especially puzzling problem. That field is that of periodic payments and more closely that of terminable rights to the income of property held in trust. Two learned gentlemen[2] have discussed the conflict between the popular conception and the equity of a technical calculation of shrinkage. Whatever the merits, the United States Supreme Court resolved the doubt and in the case of Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 69 L.Ed. 897[3] (two justices dissenting) upheld a tax upon the beneficiary.

J. Merrill Wright, Robert A. Rundle, and J. Stanton Carson, all of Pittsburgh, Pa., and David R. Shelton, of Washington, D. C. (Wright & Rundle, of Pittsburgh, Pa., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, CLARK, and GOODRICH, Circuit Judges.

CLARK, Circuit Judge.

Appellant's actual complaint is against a confusion of definition. The tax collector,

---

[1] Maguire, Capitalization of Periodical Payments By Gift, 34 Harvard Law Review 20.

[2] Maguire, Income Taxes on the Realization of Future Interests, 31 Yale Law Journal 367; Magill, The Income Tax Liability of Annuities and Similar Periodical Payments, 33 Yale Law Journal 229; and see also Taxation of Sums Received Under Rights To Future Periodic Payments, 44 Yale Law Journal 660 (note).

[3] Appeal discussed in: Taxing The Income of a Trust When The Beneficiary

Having thus umpired this war between the professor and the citizen, the Court was faced with a further dispute arising out of a provision of the revenue law exempting bequests. In the case of Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534,[4] the Supreme Court upheld the Board of Tax Appeals, 7 B.T.A. 600, 606, and the Circuit Court of Appeals, 1 Cir., 38 F.2d 162, in reversing the Commissioner's refusal to exempt an annuity established by the will of James Gordon Bennett. The cestui there held exempt took under language which empowered the executors "to retain and hold any personal property" of the testator's for payment of annuities. The telling phrase used by writers on the law for such a provision is "threat of corpus invasion".[5]

Under the ruling in the Whitehouse case, the taxability of the trustee became immediately important. To permit him a deduction for income distributed would leave the income entirely untaxed. In Helvering v. Pardee, 290 U.S. 365, 54 S.Ct. 221, 78 L. Ed. 365,[6] the Supreme Court closed the gap by denying the deduction. It is into this closed gap that petitioner, a trustee to pay annuities and administer a charitable trust of the remainder, now seeks an entrance. If it is to be reopened, the responsibility lies elsewhere.

The Supreme Court will have to be convinced of the analogy between the cognate section 162(a) and (b).[7] In interpreting subsection (a) several of the lower Federal Courts have acknowledged reality and "have allowed the deduction where the expectancy of an ample, continuing income dispels the threat of invasion,[8] and have denied it where the margin is narrow and the prospects uncertain".[9] A finding of such analogy would put an end to the criticism, a criticism that has taken two forms. First: "A test of income has been adopted which is not the common understanding of the term, nor even the actual source of the payment, but rather the remotely possible source." Magill, Taxable Income 383. Second: "One more device for tax avoidance has been set up because the settlor, by inserting in the trust instrument a power to invade corpus (even though the prospect of invasion is remote) shifts the burden of taxation to a trustee; multiplication of trusts reduces surtax rates." The Power to Invade Corpus in Federal Income Taxation of Trusts, 49 Yale Law Journal 1496, 1499 (note). The learned author of the above quoted note points out, however, that since Congress has already acquiesced in the Burnet v. Whitehouse decision any reconsideration calls for legislative action.[10]

The petitioner's dilemma is too plain to need much further exposition. His trust instrument is even more indicative of invasion than that of Burnet v. Whitehouse and Helvering v. Pardee.[11] It reads: "In the event that the income of said trust fund shall not in any year be sufficient to pay in

---

of the Income Has No Interest in the Corpus of the Estate, 82 University of Pennsylvania Law Review 747 (note).

[4] Questioned in: 31 Columbia Law Review 1053; 34 Columbia Law Review 183.

[5] The Power to Invade Corpus in Federal Income Taxation of Trusts, 49 Yale Law Journal 1496 (note).

The expression is not found in the brief of counsel.

[6] Seidman, Legislative History of Federal Income Tax Laws, (1938) p. 380

[7] 26 U.S.C.A. Int.Rev.Code, § 162(a; (the one being permanently set aside for charitable purposes); 26 U.S.C.A. Int.Rev.Code, § 162(b) (the one applicable here).

[8] Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710; Hartford-Connecticut Trust Co. v. Eaton, D.C., 41 F.2d 69; and see Helen G. Bonfils, Ex'r, v. Comm. of Internal Revenue, 40 B.T.A. 1079, Dec. 8, 1939; Hartford Nat. Bank & Trust Co. v. Hartford-Connecticut Trust Co., 20 Am.Fed.Tax R. 1325.*

[9] Boston Safe Deposit & Trust Co. v. Comm., 1 Cir., 66 F.2d 179, certiorari denied, 290 U.S. 700, 54 S.Ct. 227, 78 L. Ed. 602.*

* But contra: Charles P. Moorman Home for Women v. United States, D. C., 42 F.2d 257; see Guaranty Trust Co. of New York, Ex'r, v. Comm. of Internal Revenue, 31 B.T.A. 19, 22, affirmed, 2 Cir., 76 F.2d 1010.

[10] Int.Rev.Code § 3801(b) (4) (1939), 26 U.S.C.A. Int.Rev.Code, § 3801(b) (4); U. S. Treas. Reg. 103, Sec. 19.3801(b)-1; and see Maguire, Surrey and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale Law Journal 509, 719, 760, n. 157.

[11] The will there provided: "I also give unto my said wife an annuity of Fifty thousand Dollars ($50,000.), to be computed from the date of my decease and to be paid in advance in quarterly payments." Helvering v. Pardee, 290 U.S. 365, 370, 54 S.Ct. 221, 223, 78 L.Ed. 365.

full the annuities provided for in the foregoing paragraphs (b), (c), (d), (e), (f), (g) and (h) of this Article, the said Trustee is hereby expressly authorized and directed to withdraw from the principal of the said trust fund such amount or amounts as may be necessary to pay said annuities in full without deductions for administration expenses, commissions or any other charges." Exhibit C of Petition, Article 1, Record p. 40. We can think of no words more descriptive of a threat than "in the event of" and of an invasion than "withdraw". The fallacy of petitioner's argument lies in the fact that he ignores the sword (of Damocles) and stresses the still unbroken thread. It may be a fallacy forced on him by precedent but remains a fallacy notwithstanding.

The decision of the Board of Tax Appeals is affirmed.