MANHASSET, The (EDWARDS v.). See Case No. 4,295.

## Case No. 9,020.

### The MANHATTAN.

[2 Ben. 88;[1] 7 Int. Rev. Rec. 28; 1 Am. Law T. Rep. Bankr. 11.]

District Court, S. D. New York. Jan., 1868.[2]

SHIPPING—PASSENGER ACT—STEAMSHIPS.

The provisions of the second section of the passenger act of March 3d, 1855 (10 Stat. 715), do not apply to steamships.

[Cited in The Devonshire, 13 Fed. 41; U. S. v. The Strathairly, 124 U. S. 577, 8 Sup. Ct. 615.]

At law.

T. Simons, Ass't U. S. Atty., for libellants.

T. C. T. Buckley, S. P. Nash, and J. Larocque, for claimants.

BLATCHFORD, District Judge. This is a libel filed by the United States against the steamship Manhattan, a foreign vessel, owned in Great Britain, founded on the act passed March 3d, 1855, entitled "An act to regulate the carriage of passengers in steamships and other vessels." 10 Stat. 715. The libel alleges, in substance, that the steamship heretofore took on board, at Liverpool, in Eng-

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 15,715.]

land, sundry passengers, with the intent to bring them to the United States, and left Liverpool, and brought such passengers to the port of New York, and within the jurisdiction of the United States. It then charges that the vessel, on such voyage, did not have the berths for her passengers constructed, arranged, and occupied as required by the second section of the act, and avers violations of various provisions of that section, and claims that thereby the master of the vessel forfeited five dollars for each passenger on board on the voyage, and the owners of the vessel also forfeited five dollars for each passenger on board on the voyage, and that an action has accrued to the United States to recover such penalties, and that a lien on the vessel exists for the amount of them.

The first section of the act provides, that no master of any vessel, owned in whole or in part by a citizen of the United States, or by a citizen of any foreign country, shall take on board such vessel, at any foreign port other than foreign contiguous territory to the United States, a greater number of passengers than in the proportion of certain specified numbers to the tonnage of the vessel; that the "spaces appropriated for the use of such passengers, and which shall not be occupied by stores or other goods not the personal baggage of such passengers," shall be in certain specified proportions, namely, so many passengers to so many clear superficial feet of deck; that, if it is necessary, for safety or convenience, to store any articles "in any of the decks, cabins, or other places appropriated to the use of passengers," such places of storage shall not "be deemed to be a part of the space allowable for the use of passengers, but the same shall be deducted therefrom;" and that one hundred superficial feet of deck for a hospital "may be included in the space allowable for passengers."

The second section provides, that "no such vessel" shall have more than two tiers of berths, and prescribes what interval there shall be between the lowest part thereof and the deck, and that the berths shall be well constructed, parallel with the sides of the vessel, and be separated from each other in a certain manner, and be of such length and such width, and be occupied each by no more than one passenger, with a provision for larger berths, and for their occupation, under certain circumstances. The section then provides, that, if there shall be any violation of it in any of its provisions, the master of the vessel and the owners thereof shall severally forfeit and pay the sum of five dollars for each passenger on board of said vessel on such voyage, to be recovered by the United States in any port where such vessel may arrive.

The fifteenth section of the act provides, that "the amount of the several penalties imposed by the foregoing provisions regulating the carriage of passengers in merchant vessels, shall be liens on the vessel or vessels violating those provisions, and such vessel or vessels shall be libelled therefor in any circuit or district court of the United States where such vessel or vessels shall arrive."

Relying on the provisions thus found in the first, second, and fifteenth sections of the act, the United States have filed this libel. The libel does not allege any violation of the first section of the act, or any overcrowding of passengers, or any carrying of a disproportionate and unlawful number of passengers, or any improper occupation of the space required to be appropriated to the use of passengers, but alleges only violations of provisions of the second section of the act.

The claimants have filed eleven exceptions to the libel, only one of which, the third, is important to be considered, in the view I take of the statute. The other exceptions involve important questions relating to the admiralty jurisdiction of the court in the suit, and to the power of congress to impose on a foreign vessel a lien for the penalties prescribed by the second section of the act, and to other matters, some of substance and some of form. The third exception sets up that the requirements of the second section of the act do not apply to steamships, and that, therefore, the Manhattan is not liable for the penalties claimed in the libel.

The first, second, and fifteenth sections of the act employ only the word "vessel," without limiting the description of vessel to a merchant vessel, or a sailing vessel, or a steam vessel. The provisions of those sections would, therefore, be broad enough, were there nothing else in the act, to include a steam vessel under the words "any vessel," for, a steam vessel is none the less a vessel, in respect to her being water-borne, because she is propelled in whole or in part by steam. But the tenth section of the act provides as follows: "The provisions, requisitions, penalties, and liens of this act relating to the space in vessels appropriated to the use of passengers, are hereby extended and made applicable to all spaces appropriated to the use of steerage passengers in vessels propelled in whole or in part by steam, and navigating from, to, and between the ports, and in manner as in this act named, and to such vessels and to the masters thereof; and so much of the act entitled 'An act to amend an act entitled "An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam, and for other purposes," approved August thirtieth, eighteen hundred and fifty-two,' as conflicts with this act, is hereby repealed; and the space appropriated to the use of steerage passengers, in vessels so as above propelled and navigated, is hereby made subject to the supervision and inspection of the collector of the customs at any port of the United States at which any such vessel shall arrive, and the same shall be examined and reported in the same manner and by the same officers by the next preced-

ing section directed to examine and report." The "next preceding section," the ninth, provides as follows: "The collector of customs at any port of the United States at which any vessel so employed shall arrive, shall appoint and direct one or more of the inspectors of the customs for such port to examine such vessel, and report in writing to such collector whether the requirements of law have been complied with in respect to such vessel; and if such report shall state such compliance, and shall be approved by such collector, it shall be deemed and held as primâ facie evidence thereof."

If the provisions of the first section, relating to the space appropriated to the use of passengers, apply to steam vessels, under the designation, in the first section, of "any vessel," then the provision of the tenth section, extending such provisions, with the penalties and liens arising therefrom, "to all spaces appropriated to the use of steerage passengers in vessels propelled in whole or in part by steam," is useless and of no effect. So, also, if the provision of the ninth section relating to the inspection of "any vessel," with a view to see "whether the requirements of law have been complied with in respect to such vessel," applies to the inspection of steam vessels, then the provision of the tenth section, subjecting "the space appropriated to the use of steerage passengers" in steam vessels to like inspection, is utterly nugatory. All the affirmative and substantial provisions of the tenth section must be held to be meaningless, if the first and ninth sections are held to apply to steam vessels. And, if the first section does not apply to steam vessels, the second does not, for, the only designation, in the second section, of any vessel to which its provisions are to apply, is by the description, "such vessel,"—that is, such a vessel, and such a vessel only, as the first section applies to and designates.

But there is something more. The first section relates solely to the space appropriated to the use of passengers. The tenth section extends the provisions, requisitions, and penalties found in the first section, and the liens which arise therefrom by virtue of the fifteenth section, and makes them applicable to something to which, by virtue merely of the first and fifteenth sections, and but for the tenth section, they would not extend and be applicable. This must be the meaning of the tenth section, or there is no force in language. If those provisions, requisitions, penalties, and liens extend and apply without the tenth section, just as far and as widely as they do with and by means of the tenth section, then the tenth section may be obliterated from the act. But the proper rule of construction in regard to statutes is, that they must be so construed as to give force and effect and meaning and consistency to all their provisions. By construing the first and ninth sections as not applying to steam vessels, the tenth section has a meaning and

operation in all its parts. It extends and applies the first and fifteenth sections, so far as they relate to the space in vessels appropriated to the use of passengers, "to all spaces appropriated to the use of steerage passengers in vessels propelled in whole or in part by steam, and navigating from, to, and between the ports, and in manner as in this act named, and to such vessels and to the masters thereof;" and it extends and applies the inspection provided for by the ninth section to the space appropriated to the use of steerage passengers in the steam vessels named in the tenth section. But the tenth section is very limited in its provisions. It extends to steam vessels only those provisions of the act which relate to the space "appropriated to the use of passengers." Those provisions are found in the first section, and nowhere else. The first section contains in various places the words, "the spaces appropriated for the use of such passengers," "the space aforesaid," "places appropriated to the use of passengers," "space allowable for the use of passengers," "spaces appropriated to passengers," "space allowable for passengers." Similar expressions are not found in any other section of the act except the tenth; and the first section is wholly taken up with prescribing the superficial deck space to be appropriated to each passenger of the number which, by its tonnage, the vessel is authorized by the first section to carry. Again, these provisions of the first section in regard to such space are, by the tenth section, extended and made applicable only to the spaces appropriated to the use of steerage passengers in steam vessels. The tenth section draws a clear distinction between the vessels referred to in the first section, navigating between the ports named in the first section, and steam vessels navigating between the same ports, and indicates, in a manner not to be mistaken, that, as the vessels over which, in certain respects, the tenth section causes the provisions of the first section to be extended, are steam vessels, the vessels to which the first section applies proprio vigore do not include steam vessels. Nor do the vessels to which the second section applies include steam vessels; and the tenth section does not extend the second section to steam vessels. In no proper sense can the provisions of the second section be said to relate to the space appropriated to the use of passengers. That "space" means the superficies of clear and unobstructed deck-room to which each passenger is entitled by the first section. The second section relates wholly to the arrangement of the sleeping accommodations.

It was urged, on the part of the government, that the fact that the tenth section repeals so much of the act of August 30th, 1852 (10 Stat. 61), as conflicts with the act of 1855, taken in connection with the fact that certain provisions of the act of 1852 related substantially to the space appropriated to the use of passengers in vessels propelled in whole or

in part by steam, and were materially different from those found in the act of 1855, shows that the act of 1855, while substituting, by the tenth section, the provisions of the act of 1855, relating to such space, for those of the act of 1852, so far as concerns steamships, was not intended to exempt steamships from the other provisions of the act of 1855. There would be force in this argument if there were found in the tenth section only an isolated clause repealing so much of the act of 1852 as conflicts with the act of 1855. Then the argument would be a good one, that the word "vessel," in the first and second sections, includes steamships, because otherwise there could be nothing in the act of 1852, which relates exclusively to steamships, in conflict with anything in the act of 1855. But this argument fails in view of the other clauses found in the tenth section. That section alone, in the act of 1855, relates to steamships, and as there might be something in the provisions which the tenth section applies to the spaces appropriated to the use of steerage passengers in steam vessels, which would conflict with provisions in the act of 1852, it was proper to repeal the earlier conflicting provisions.

It is well known that the mischiefs which congress was endeavoring to correct when this law was enacted, were those which had arisen in sailing vessels. But, whether this were so or not, congress has, by the statute, drawn a plain distinction in respect to steamships, and has made only certain specified and limited provisions, not including those of the second section, applicable to steamships.

This libel cannot be sustained without obliterating the tenth section from the act. I therefore allow the third exception, and dismiss the libel, without passing on any of the other exceptions in the case.

This decision was affirmed by the circuit court, in October, 1868. [Case No. 15,715.]