## THE DEVONSHIRE.

*(Circuit Court, D. Oregon. July 28, 1882.)*

1. BERTHS ON STEAM-VESSELS.

   The provisions of section 2 of the act of March 3, 1855, (10 St. 716; section 4255, Rev. St.,) relating to the construction and occupation of berths on vessels carrying passengers from foreign ports to the United States, are not deemed applicable to steam-vessels.

2. RE-ENACTMENT OF STATUTE—FORMER CONSTRUCTION OF IT.

   Where a statute has received a judicial construction and is afterwards re-enacted by the legislature of the same or another country, it is presumed to have been passed as construed.

In Admiralty.

*James F. Watson*, for the United States.

*John W. Whalley*, for claimants.

DEADY, D. J. This is a suit *in rem* brought by the United States to enforce a lien against the British steam-ship Devonshire for $4,-130 of penalties alleged to have been incurred by the master and owners by violation of section 2 of the act of March 3, 1855, (10 St. 716; section 4255 of the Rev. St.,) entitled "An act to regulate the carriage of passengers in steam-ships and other vessels."

The libel alleges that on June 12, 1882, the said steam-ship, at the port of Hong Kong, China, took on board 826 passengers, and on July 7, 1882, brought the same to the port of Astoria, and within the jurisdiction of the United States and this court; that the berths used by the passengers on said voyage were not constructed parallel with the sides of the vessel or separated by partitions, or two feet in width, as required by said section 4255 of the Revised Statutes, and were occupied by more than one passenger, contrary thereto, whereby said master and owner of said steam-ship, severally, became liable to pay to the United States a penalty of five dollars for each of said passengers, and that the libelant has a lien upon said steam-ship for the amount thereof.

The claimants except to the libel, and allege that the Devonshire is a steam-ship, and the passengers in question were steerage passengers, and therefore said section 4255 of the Revised Statutes upon which the libel is founded, does not apply to her, and pray that the libel may be dismissed.

The first section of this act (sections 4252-3-4 of the Rev. St.) provides that "no master of any vessel," foreign or domestic, shall take on at any foreign port in a territory not contiguous to the United States, with intent to bring thereto, a greater number of passengers than in the proportion of one to every two tons of said vessel, and that "the spaces appropriated for the use of said passengers, and which shall not be occupied by stores or other goods, not the personal baggage of such passengers," shall be in a certain specified proportion to the whole number of passengers allotted to such space.

The second section (section 4255 of the Revised Statutes) provides that "no *such* vessel shall have more than two tiers of berths;" and prescribes "the interval between the lowest part thereof and the deck or platform;" and that "the berths shall be well constructed, parallel with the sides of the vessel, and separated from each other by partitions;" and be of a certain length and width, and each only occu-

pied by one passenger; with a provision for double berths to be occupied by more than one person under certain circumstances and restrictions. For any violation of this section it is declared that the master of the vessel and the owners thereof shall severally be liable to a penalty of five dollars for each passenger on board of such vessel on such voyage, to be recovered by the United States in any port when such vessel may arrive or depart.

The fifteenth section (section 4270 of the Revised Statutes) declares that "the amount of the several penalties imposed by the foregoing provisions regulating the carriage of passengers in merchant vessels shall be liens on the vessel violating those provisions; and such vessels shall be libeled therefor in any district or circuit court of the United States where such vessel shall arrive."

Each of these sections uses the word "vessel" without in any way limiting its application to a sail-vessel. Standing alone and without qualification, they would include in their provisions a steam as well as a sail-vessel. A vessel is none the less one on account of the manner of her propulsion, whether by oars, sails, or steam; and the Revised Statutes (section 3) declare that the term "includes every description of water-craft, or other artificial contrivance used or capable of being used as a means of transportation on water."

But the tenth section of the act (section 4264, Rev. St.; Act Feb. 27, 1877; 19 St. 250) provides that "the provisions, requisitions, penalties, and liens of this act relating to the space in vessels appropriated to the use of passengers are hereby extended and made applicable to all places appropriated to the use of steerage passengers in vessels propelled in whole or in part by steam, and navigating from, to, and between the ports, and in manner as in this act named, and to such vessels and the masters thereof;" and repeals so much of the steam-boat act of August 30, 1850, (10 St. 61,) as conflicts therewith; and further provides that "the space appropriated to the use of steerage passengers" on steam-vessels shall be "subject to the supervision and inspection of the collector of customs," as provided in section 9 of the act, in the case of other vessels.

In January, 1868, this statute came before the district court for the southern district of New York for construction, in the case of *The Steamship Mahattan* 2 Ben. 88, which was libeled on account of penalties alleged to have been incurred by the master and owner in the violation of this same section 2.

Judge Blatchford held that the section was not applicable to steamships, upon the familiar rule that the statute must be so construed

as to give effect to every significant clause, sentence, or word in it, (Smith, Comp. § 575;) and, if the provisions of the second section extended to steam-vessels *proprio vigore*, notwithstanding the tenth section, then the provisions of the first section do also, and the tenth is altogether useless and nugatory. This decision was affirmed on appeal to the circuit court, and the judge who made it has since been placed on the supreme bench. No other decision upon the act has been cited or come to my knowledge.

In the revision of the statutes this section 10 was omitted, and the whole act left applicable to steam-vessels. But afterwards it was re-enacted as an amendment to section 4264 of the Revised Statutes, by the act of February 27, 1877, (19 St. 250,) "to perfect the revision of the statutes of the United States" etc. By reason of this amendment the statute now stands as when the second section was construed, in the case of *The Manhattan* not to be applicable to steam-vessels, with this additional and material circumstance in favor of such construction, namely: that congress, by the deliberate replacement of section 10, have not only declared it shall have effect as a part of the statute, but presumably that it shall have such effect according to the then known construction given to it in that case. *Pennock* v. *Dialogue*, 2 Pet. 18; *Kirkpatrick* v. *Gibson's Ex'rs*, 2 Brock. 391; *Com.* v. *Hartnett*, 3 Gray, 451; *Cathcart* v. *Robinson*, 5 Pet. 279.

The argument of the district attorney in favor of the libel is that the provisions in section 2 are regulations relating to the "space" appropriated to passengers, and therefore made applicable to steam-vessels by the operation of section 10, because by them the "space" between each berth and that appropriated to each passenger therein is prescribed. And when we consider that the evils intended to be prevented by section 2 are as likely to exist in the case of steerage passengers carried in steam-ships as those against which section 1 is intended to guard, it is not without force.

There is quite as much need that a steerage passenger shall have the "space" and privacy provided in section 2 when he lies down to sleep, or is prostrated with sickness, as that he shall have the general moving and breathing "space" between decks provided in section 1. And although the word "space" is not used in section 2, still, that is the subject of it, and its division and appropriation among the passengers, for the purpose of berths, is thereby carefully and minutely regulated.

But, in the light of the decision in the case of *The Manhattan,* and particularly the unqualified re-enactment by congress of section 10 in

1877, after the construction there given to it in 1868, I do not feel at liberty to hold otherwise. The exception is sustained and the libel dismissed.

And it may not be amiss to remark that this conclusion is not in conflict with what may be called the justice of the case. These Chinese immigrants are all males, and generally adults, and there is very little need, in their case, in the division of berths as required by said section 2.

This regulation was made to meet the case of European immigrants, consisting of both sexes, married and unmarried.

It is not pretended that any particular harm or inconvenience has resulted from the want of a division of berths in this case, and the enforcement of the law, even if it were applicable, would be more for the punishment of the shipper than for the protection of the immigrant.