**BOSTON SAFE DEPOSIT & TRUST CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 2758.

Circuit Court of Appeals, First Circuit.

June 15, 1933.

Rehearing Denied July 7, 1933.

J. P. Jackson, Sp. Asst. Atty. Gen. (Sewall Key and J. Louis Monarch, Sp. Assts. Atty. Gen., and C. M. Charest, Gen. Counsel, and C. C. Holmes, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals reported in 26 B. T. A. 486. It involves deficiencies in income taxes for the years 1926 and 1927 in the respective amounts of $3,578.15 and $3,792.53. The appeals from the decision of the Commissioner for each year were consolidated by order of the Board of Tax Appeals as the same questions are involved in each deficiency assessment.

Herbert A. Wilder of Newton, Mass., died October 12, 1923, leaving a will which was duly probated. The petitioners, the Boston Safe Deposit & Trust Company, a Massachusetts corporation, and Everett E. Kent, are the surviving executors of the will and trustees named thereunder, and during the years in question were administering the trust created by the will.

The parts of the will material to the determination of the case are as follows:

"Fifth Item.—I direct that all the bequests and devises in this my will be made free from all legacy and inheritance taxes and government dues of every kind, and that my executors pay all such taxes and dues attaching at the time of the probate of my will to the various legacies and provisions, from the remaining portion of my estate, so that all the legacies and provisions in the foregoing and the next following items may be undiminished save as the ultimate residue may be affected by having to bear such payments.

"Sixth Item.—I give, bequeath and devise to my trustees hereinafter named, their survivors, survivor, successors or successor, but in trust nevertheless, all the rest, residue and remainder of my property and estate, personal or real, wherever found or situated, including the reversions or remainders established or contemplated in the foregoing items of this my will, and any income or benefits which may result to my estate from any transactions I may effect in my lifetime, the same to be invested and held by said trustees in safe and suitable securities and properties, save as hereinafter provided, *and from the*

Harris H. Gilman, of Boston, Mass., for petitioners.

*income and so much of the principal of the trust fund as may be needed or required from time to time.* (Italics supplied.)

"(a) to pay and keep down all taxes, assessments, insurance, repairs and improvement charges or expenses of any kind. * * *

"(b) to pay all charges, taxes and expenses upon or connected with the trust or trust property, so long as the trust continues. * * *

"(c) to pay annuities, or total net sums in every year, to the persons and in the instalments next below named, or stated, giving to each person named so long as he or she may live, save as hereinafter qualified, respectively, a total annual amount as follows, to wit:

"To my daughter Constance Perley Wilder, Five thousand dollars, payable in monthly instalments.

"To my daughter, Margaret Guild Wilder, Five thousand dollars, payable in monthly instalments.

"To my daughter, Mary Clement Kent, Six thousand dollars, payable in monthly instalments."

(Then follow twelve or more other annuities.)

"(d) To each of my grandchildren, whether born before or after my death, I give an annuity or total net sum of Three hundred dollars annually, until each such grandchild shall attain the age of twenty-one years, the same to be deposited in Savings Banks, in the successive years, and each grandchild to be allowed to withdraw the income upon such deposits for his or her benefit respectively, in each year after the said age of twenty-one years is attained, but the principal not to be withdrawn by the respective grandchild until the age of twenty-eight years be reached. * * *

"I direct that out of the trust fund created by this item of my will, any portion of a total of twenty-five thousand dollars may be used in the successive years, from time to time, by my trustees, to amplify any of the benefits provided for my daughters or their families, under this Item of my will, in cases of sickness or physical distresses of any of them; such awards from such twenty-five thousand dollar fund, however, to be only in cases of such sickness or necessitous circumstance as in the discretion and judgment of my trustees would constitute special occasion for the enhanced assistance; this sickness

benefit fund to be applicable to my children and grandchildren as well as to the other family annuitants mentioned in this connection.

"*If there be any insufficiency or shortage of funds wherewith to meet all the provisions of my will, I direct that the legacies, annuities, and other benefits in favor of my daughters, shall be met and paid in full, without any deductions, in any event,* the same to have priority over any other benefits in the event of any such deficiency. (Italics supplied.)

"(e) If at the death of my first daughter who shall decease, it shall appear to my then surviving trustees or trustee, or to the trustees at such times acting under this my will, *that there is a sufficient trust fund or estate abundantly to pay and supply all the annuities provided for in this item of my will,* then said trustees or trustee, at the death of such first daughter to decease, may pay over to the final or ultimate residuary beneficiaries of my estate, later mentioned in this item of my will, one-third of the then existing trust fund; and upon the death of my daughter who shall be the second to decease, said trustees or trustee, *if assured of the sufficiency of my estate,* may pay over to said ultimate beneficiaries, another equal portion of the then remaining trust fund, that is to say, substantially one-half of such trust estate as may be in the hands of the trustees or trustee at the death of such second decedent. (Italics supplied.)

"(f) at the death of my last surviving daughter all the annuities given or established by this my will, shall terminate and cease, notwithstanding any language, terms or provisions hereinabove connected with any particular annuity; all and every annuity provision hereinbefore made or stated being subject and subordinated to this limitation, so that after the death of my last surviving daughter the distribution and settlement of the entire trust may be in a short time accomplished.

"(g) after the death of my last surviving daughter I give, bequeath and devise all the trust funds and estate then remaining or existing to the final beneficiaries hereinbelow named, in the shares or proportions below stated, to be theirs absolutely and in fee. I authorize my then surviving or acting trustees or trustee, to convert into money such portion of the then existing trust estate as they or he may deem expedient, or to pay over and distribute either in money or securities to the said final beneficiaries as at the time may be found expedient and judicious.

Such final beneficiaries being the following, to wit."

(Here follow the names of fourteen charitable or educational beneficiaries and their respective proportionate shares of the residual estate.)

The decedent, Herbert A. Wilder, was survived by his three daughters, all of whom were living in 1926 and 1927, and by three grandchildren, all children of Everett E. and Mary Clement Kent. No children have been born to any of his daughters since his death.

The value of the estate of the decedent, Herbert A. Wilder, on January 1, 1926, and on January 1, 1927, was not less than $1,000,-000. The executors have paid all bequests and annuities and have paid all expenses of the administration and operation of the estate up to and including the years under consideration.

The fourteen institutions named in item Sixth (g) of the will are corporations organized and operated exclusively for religious, charitable, literary, or educational purposes, as contemplated by section 403 (a) (3) of the Revenue Act of 1921 (42 Stat. 279) and section 219 (b) (1) of the Revenue Act of 1924 and 1926 (26 USCA § 960 note).

In determining the estate tax and for the purpose of closing the estate, the Board of Tax Appeals in 20 B. T. A. 1159, found the present worth of the remainder to the charitable and educational institutions was at least $345,000, and allowed that as a deduction from the gross estate in order to arrive at the estate tax, and the facts found by the Board of Tax Appeals in that case it agreed by stipulation, shall be incorporated as a part of the facts in these proceedings by reference.

On behalf of the Wilder estate, the petitioners filed income tax returns for the years 1926 and 1927, showing no taxable income for such years. The respondent computed net incomes of $53,406.82 and $55,030.88 for 1926 and 1927, respectively. He denied deductions of $35,082.82 (exclusive of income from nontaxables) for the year 1926, and $33,862.88 for the year 1927, as income received by the trustees under the will of the said Wilder, and by them paid to the annuitants. He also denied deductions of $18,324 for 1926, and of $12,992.36 for 1927 (exclusive of income from nontaxable securities), claimed by the petitioners to have been received by the trustees and by them accumulated for the benefit of the charitable and educational institutions named in

the will. The respondent further increased the petitioners' income for the year 1927 by the sum of $8,175.64, representing profit from the sale of securities. This sum likewise was omitted from the petitioners' return, because it was treated as capital gain accumulated for the benefit of charities.

The questions presented for decision are:

(1) Were the petitioners, in computing their tax liability for the years 1926 and 1927, entitled to deduct, from the gross income received the year 1926, the sum of $35,082.82 (exclusive of income from nontaxables), and $33,862.88 for the year 1927, as distributions of income by the fiduciaries under the will of said Wilder to the annuitants therein named; (2) whether the petitioners were entitled to deduct in addition the surplus income of $18,324 and $12,992.36 for the years 1926 and 1927, respectively (exclusive of income from nontaxable securities accumulated); (3) whether in the year 1927 the petitioners were entitled to deduct the sum of $8,175.64 as representing profit or capital gain on the sale of securities alleged to have been permanently set aside or to be used pursuant to the terms of the will exclusively for the benefit of the charitable and educational institutions named? (4) Was the finding by the Board of Tax Appeals in the case reported in 20 B. T. A. 1159 that $345,000 was the estimated minimum value in 1923 of the sum that would eventually go to the charitable and educational institutions named, and was thereby, in effect, permanently set aside for charitable and educational institutions within the meaning of section 219 (b) (1), and is the finding res adjudicata?

The statutes involved are sections 219 (b) (1), (2), and (3), 214 (a) (10) of the Revenue Act of 1926, chap. 27, 44 Stat. 9, 26, 32 (26 USCA § 955 (a) (10), and § 960 note). The income taxes of the estate and trust were computed under section 212 of the 1926 act (26 USCA § 953); but under section 219 (b) (1) there shall be allowed as a deduction from the gross income (in lieu of the deduction authorized by paragraph [10] of subdivision [a] of section 214), "any part of the gross income, without limitation, which, pursuant to the terms of the will or deed creating the trust, is, during the taxable year, paid or permanently set aside for the purposes and in the manner specified in paragraph (10) of subdivision (a) of section 955 [214], or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes."

The answers to the questions involved depend on whether the testator intended by the terms of his will that the corpus of the trust funds should be held intact in order to ensure the payment of the annuities; whether any part of the income thereof can be considered as set aside permanently, for the purposes and in the manner specified in section 214 (a) (10), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes; whether the payment of the annuities is conditioned upon there being sufficient income to pay them, or whether they constituted a definite fixed sum to be paid in any event so long as there was any of the corpus of the trust fund left, as was held in Commissioner of Internal Revenue v. Whitehouse (C. C. A.) 38 F.(2d) 162; Burnet, Com'r, v. Whitehouse, 283 U. S. 148, 51 S. Ct. 374, 75 L. Ed. 916, 73 A. L. R. 1534; Charles P. Moorman Home for Women et al. v. United States (D. C.) 42 F.(2d) 257; and whether the securities sold in 1927, or the gain therefrom, had been permanently set aside for the uses described in section 219 (b) (1) or were by the terms of the will to be used exclusively for charitable or educational purposes.

While at the time of the testator's death there was sufficient income from the trust fund to pay all the annuities, and during the years here involved the annuities were in fact paid out of the income, the income fell off appreciably, even in 1927. It is clear, however, from the provisions of the will that the testator anticipated that in a period of deflation, such as occurred in 1929–1933, or occurring at any time before the termination of the trust, the trust fund might fail to produce the necessary income out of which the several annuities could be paid, together with other expenses, which he also made a charge upon the trust fund, and directed that the trustees, "from the income and so much of the principal of the trust fund as may be needed or required from time to time * * * to pay the annuities, or total net sums in every year, to the persons and in the instalments next below named, or stated, giving to each person named so long as he or she may live, save as hereinafter qualified, respectively, a total annual amount as follows." Following the name of each annuitant is the specific amount each is to receive.

In subdivision (d) of item Sixth he made the further specific provision:

"If there be any insufficiency or shortage of funds, wherewith to meet all the provisions of my will, I direct that the legacies, annuities and other benefits in favor of my daughters, shall be met and paid in full, without any deductions, in any event, the same to have priority over any other benefits in the event of any such deficiency."

In subdivision (e) of item Sixth he further provided that if there should be a sufficient trust fund or estate, he does not limit it to income, to pay and supply all the annuities, on the death of one of his daughters, the trustees may then distribute one-third of the corpus to charitable institutions named; "and upon the death of my daughter who shall be the second to decease, the trustees or trustee, if assured of the sufficiency of my estate, may pay over to said ultimate beneficiaries, another equal portion of the then remaining trust fund, that is to say, substantially one-half of such trust estate as may be in the hands of the trustees."

Under such provisions we think that no part of the trust fund or any surplus income for any year, after the payment of the annuities, can be held to be permanently set aside "without limitation" for any charitable, religious, or educational institutions within the meaning of paragraph (1) of subdivision (b) of section 219 of the 1926 Act, or can be said to be certain "to be used exclusively" for religious, charitable, or educational purposes.

It is perfectly clear from the provisions of the will that the testator made the specific annuities and expenses a charge upon the entire trust fund, and not alone on the income thereof. He made the payment of the annuities certain, especially to his daughters, as long as there was anything left of the corpus of the trust. No distribution to the charitable or educational institutions named, notwithstanding the Board's decision in 20 B. T. A. 1159, could be made unless there was a sufficient amount left to provide for all the annuities, and especially those to his daughters.

The case differs from Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897, in which the annuities or bequests were payable out of income, and if no income, there could be no payment to the beneficiary named.

The petitioners, therefore, were not entitled either under section 219 (b), (1), (2), or (3), to the deductions claimed, viz., the sum of $35,082.82 in 1926, and $33,862.88 in 1927, as distributions to the annuitants in those years, since such fixed annuities are in the nature of bequests and not taxable income to the annuitants, Burnet, Com'r, v. Whitehouse, supra; Atkins v. Com'r (C. C.

A.) 63 F.(2d) 88; nor were they entitled to deductions of $18,324 and $12,992.36, being surplus income for the years 1926 and 1927, respectively, and claimed by the petitioners to be accumulated by the trustees for the charitable and educational institutions named, as such accumulations have become a part of the corpus of the trust, charged first with the payment of the annuities and expenses.

The case of Hartford-Connecticut Trust Co. v. Eaton (D. C.) 29 F.(2d) 840, affirmed in (C. C. A.) 36 F.(2d) 710, is cited by the petitioners as supporting their contention; but in that case there was but one beneficiary, a widow, who was entitled during her life to the net income on an estate valued at $1,000,-000, the residue at her death to be distributed among certain charitable and educational institutions. The trustee was given power to pay over to her any part of the principal it might deem necessary for her comfortable maintenance and support. The District Court, however, found as a fact that there was no reasonable possibility, considering the income of the trust fund, her mode of living, and her own personal estate, that she would ever require, or the trustee be warranted in paying over to her, any part of the principal for her comfortable maintenance and support, and that all of the principal of the trust fund was certain to be used for charitable and educational purposes, and therefore any income which became a part of the corpus of the trust was exempt under section 219 (b) (1). The petition contained an allegation that the income which was derived from the sale of certain securities formed a part of the principal of the trust fund, and the sale was a mere transformation of a part of the corpus of the trust fund. The issue arose on a demurrer, which admitted the allegations of the petition and the District Court held that inasmuch as there was no possibility that any part of the principal would ever be necessary to ensure her comfortable maintenance and support, it was to be used "for exempt purposes," and the gain from the sale of securities was not taxable. It was affirmed substantially on this ground in 36 F.(2d) 710.

In the case at bar there is not one annuitant, but may be at least twenty-five, and the sums to be paid were definite and fixed, and in each of the years 1926 and 1927 totalled approximately $35,000. The income over and above this sum in 1926 was $18,324, while in 1927 it was only $12,992.36. It cannot be said, we think, and the testator was evidently of the same opinion, that there was no possibility that in periods of depression, such as occurred in 1929-33, it might not be necessary to use a part of the principal, together with any accumulated income, to meet all the fixed amounts to be paid "pursuant to the terms of the will."

We think the words "or to be used" have no such significance as was given them in Hartford-Connecticut Trust Co. v. Eaton, supra, but should be construed with what precedes them, and in this particular paragraph (1) of subdivision (b) should be construed as if reading as follows: "There shall be allowed as a deduction * * * any part of the gross income, without limitation, which, pursuant to the terms of the will * * * creating the trust, is to be used exclusively for religious," etc.

Under a will which limits the use of a trust fund to the payment of fixed annuities provided for the testator's daughters, and which may be paid from the corpus of the trust fund before it can be applied to any other use, it cannot be said that "pursuant to the terms of the will" any part of the gross income "is to be used exclusively" for charitable and educational uses.

■ It is urged that since the Board of Tax Appeals in 20 B. T. A. 1159 determined that $345,000 of the trust fund was the minimum amount under the will that would go to the charitable and educational institutions named as remaindermen, therefore the sum had been permanently set aside for charitable or educational purposes, and the finding of the Board on this point was res adjudicata. But the construction of section 219 of the act of 1926 (26 USCA § 960 note) was not the issue in that case. Some sum had to be determined as the value of the present worth of the remainder to the institutions named, in order that the estate tax might be assessed and the estate closed so far as the executors were concerned; but the Board did not decide that this sum might not be used, if the items of the will and conditions required it, to pay the annuities and fixed charges.

The Board in that case based its finding on the theory that the principal would not be used to pay the annuities, and found the present worth of the residuary bequests for the purpose of fixing the estate taxes. In view of the testator's clear intent that the annuities were a charge upon the entire corpus of the trust, it cannot be said that the finding of the present worth of the residuum by the Board, in order to determine the estate tax, is a permanent setting aside of the amount for charitable and educational uses,

or a finding on the facts before the Board in these proceedings, that the sum named "is to be used" exclusively for such purposes. It may be probable, depending on the security market, that some part or all of the principal sum will go to the remaindermen, but it cannot be said to be so, "pursuant to the terms of the will."

The Board found as facts: That the testator anticipated that the income might be insufficient to pay all the charges and that the possibility that a part of the principal might be so used was not too remote; that no specific fund of $345,000 had been designated or segregated or set aside by the trustees as an amount certain to go to charities; and that no income or gain from the sale of securities was or could be identified as resulting from securities set aside for the remaindermen. An appeal from the Board of Tax Appeals raises only questions of law. Findings of fact by the Board are conclusive, unless shown to be without any evidence to support them. Phillips et al. v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289.

The decision of the Board of Tax Appeals is affirmed.