**COMMISSIONER OF INTERNAL REVE-
NUE v. F. G. BONFILS TRUST
et al.**

**F. G. BONFILS TRUST et al. v. COMMIS-
SIONER OF INTERNAL REVENUE.**

Nos. 2135, 2136.

Circuit Court of Appeals, Tenth Circuit.

Nov. 6, 1940.

BRATTON, Circuit Judge, dissenting.

————◇————

Warren F. Wattles, Sp. Asst. to the Atty.
Gen. (Samuel O. Clark, Jr., Asst. Atty.
Gen., and Sewall Key, Sp. Asst. to the
Atty. Gen., on the briefs), for Commis-
sioner of Internal Revenue.

John H. McEvers, of Kansas City, Mo.
(James B. Grant and Stephen H. Hart, both

of Denver, Colo., and Reece A. Gardner, of Kansas City, Mo., on the briefs), for respondents and cross-petitioners.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

These are petitions to review a decision of the Board of Tax Appeals.

### The Facts.

F. G. Bonfils, a resident of Denver, Colorado, died testate, February 2, 1933, leaving surviving him Belle Bonfils, his widow. By his will he made specific bequests and left the remainder of his estate to The Denver National Bank and The First National Bank of Kansas City, Missouri, as trustees. The trustees were directed to collect the income from the trust estate and out of the net income to pay, in their absolute discretion, for the education of two minor children, up to $10,000, and beginning March 1, 1933, certain specified annuities. [1] The will directed that in the event the income should be insufficient to pay the annuities in full, the balance thereof should be paid out of the corpus of the trust estate. It further directed that, beginning April 1, 1934, the trustees should pay over to The Frederick G. Bonfils Foundation all of the remainder of the net income of the trust estate in at least semiannual installments; that capital gains should be added to and retained as a part of the corpus of the trust estate; and that, within ten years after the death of the last survivor of the annuitants, the corpus of the trust estate should be paid over to and expended by the Foundation, which is a charitable corporation within the meaning of § 23(o) (2) of the Revenue Act of 1934, 48 Stat. 690, 26 U.S.C.A. Int.Rev. Acts, page 674.

Belle Bonfils, the widow, rejected the will and elected to take one-half of her husband's estate. It consisted of assets having a fair market value as of February 2, 1933, of $14,300,326.01, against which there were debts and charges, including the costs of administration, aggregating $822,517.81, leaving a net estate of $13,477,808.20.

During 1934, the executors of the Bonfils estate distributed to the trustees 2,500 shares of stock of the Boma Investment Company, which was immediately surrendered to the Investment Company in exchange for assets having a fair market value of $5,333,534.59. On November 6, 1937, the trustees received from the executors a further distribution of 727 shares of stock of the Investment Company, and on December 20, 1937, the trustees received, as one of a series of distributions in complete liquidation of the Investment Company, assets having a fair market value of approximately $447,000. On December 23, 1938, the trustees received in final liquidation of the Investment Company, assets of the fair market value of $519,389.53. It is anticipated that the trustees will receive additional assets from the estate having a fair market value of not less than $679,000. The average annual income for the five years 1934 to 1938, inclusive,

---

[1] The name, date of birth, age, and life expectancy of each annuitant and annual amount of each annuity are as follows:

| Name of Annuitant | Date of Birth | Age at Date of Testator's Death 2/2/33 | Expectancy at Date of Testator's Death 2/2/33 | Annuity |
|---|---|---|---|---|
| Helen G. Bonfils | November 27, 1890 | 42 | 26.7 | $ 75,000(a) |
| May Bonfils Berryman | April 30, 1883 | 50 | 20.9 | 25,000 |
| Charles A. Bonfils | March 17, 1875 | 58 | 15.4 | 2,400 |
| Gertrude Yard | June 10, 1873 | 60 | 14.1 | 1,200 |
| Nellie Barber | April 19, 1869 | 64 | 11.7 | 2,400 |
| Etta B. Walker | July 22, 1865 | 68 | 9.5 | 2,400 |
| Catherine Donnelly | February 7, 1863 | 70 | 8.5 | 600 |
| Thomas L. Bonfils | September 29, 1857 | 75 | 6.3 | 1,200 |
| Emma Bryant (b) | June 27, 1853 | 80 | 4.4 | 1,200 |
| Volney T. Hoggatt (c) | June 10, 1860 | 73 | —— | 1,200 |

Maximum annual amount      $112,600

(a) $25,000 during the life of Belle Bonfils, and $75,000 thereafter. Belle Bonfils died June 3, 1935.
(b) Emma Bryant died May 1, 1936.
(c) Volney T. Hoggatt died July 12, 1934

received by the trustees from the trust estate was $529,414.85. [2]

The amounts of the annuities payable and paid during the years 1934 to 1937, inclusive, were $62,035.48, $90,150, $110,600, and $110,200 respectively. The amount of such annuities payable in 1938 was $110,200, unless one or more of the annuitants died before December 31, 1938. The trustees have kept their books and filed their income tax returns on the calendar year and cash receipts and disbursements basis.

During the years 1934 and 1935 the trustees derived capital gains of $793,284.59 and $70,995.23, respectively, and paid annuities, pursuant to the terms of the will, of $62,035.48 and $90,150, respectively. In auditing the income tax returns of the trustees for the years 1934 and 1935, the Commissioner determined that the capital gains and annuity payments were not deductible and determined deficiencies accordingly.

On the primary facts as stipulated the Board found as a fact "that the probability

2 The trustees received from property distributed to and held by them incomes, less expenses other than income taxes and exclusive of capital gains, as follows:

| | |
|---|---|
| 1934 | $168,747.22 |
| 1935 | 345,669.92 |
| 1936 | 380,573.55 |
| 1937 | 377,504.52 |

Property which they will ultimately receive produced additional net income (exclusive of capital gains) as follows:

| | |
|---|---|
| 1934 | $398,847.00 |
| 1935 | 142,834.21 |
| 1936 | 172,766.62 |
| 1937 | 139,455.40 |

Property held by the trustees, both directly and indirectly, produced recurrent net income as follows:

| | |
|---|---|
| 1934 | $567,594.22 |
| 1935 | 488,504.13 |
| 1936 | 553,340.17 |
| 1937 | 516,959.92 |

The current fair market value of the assets of the trust estate and the ordinary income therefrom are substantially as follows:

| | | Current Fair Market Value | Current Income |
|---|---|---|---|
| Cash | | $ 163,912.20 | |
| United States Government Bonds and Notes | | | |
| (a) | $2,550,300.58 | | $ 59,021.25 |
| (b) | 125,155.63 | | 3,729.37 |
| (c) | 334,357.50 | 3,009,813.71 | 6,948.75 |
| Municipal Bonds | | | |
| (a) | 597,169.37 | | 25,660.00 |
| (b) | 1,006.20 | 598,175.57 | 35.00 |
| Corporate Bonds | | 387,590.00 | 13,150.00 |
| Corporate Stocks | | | |
| (a) Post Printing & Publishing Co.* | | | |
| (1) 718,451 shares | 1,977,740.00 | | 273,011.00 |
| (2) 87.61766 shares | 240,948.56 | | 33,294.71 |
| (3) 125.4 shares | 344,850.00 | 2,563,538.56 | 47,652.00 |
| (b) Other Stocks and Miscellaneous | | | |
| (1) | 1,147,330.59 | | 57,781.88 |
| (2) | 5,292.76 | 1,152,623.35 | 391.85 |
| | | $7,875,653.39 | $520,675.81 |

*These values are on the basis of the stock of The Post Printing & Publishing Company being worth $2,750 a share. It was stipulated that that stock had a value of not less than that figure. The Commissioner of Internal Revenue had determined a value as of June 3, 1935, of $3,000 a share. If that value is correct, and it presumptively is, it would increase the value of the assets of the trust estate by $232,867.16, making total assets of $8,108,520.53.

of the invasion of corpus" to pay annuities "is so remote as to be negligible." The Board decided that the capital gains were deductible and that the annuity payments were not deductible.

## No. 2135.

This is a petition by the Commissioner to review that part of the decision holding the capital gains deductible.

Sec. 162 of the Revenue Act of 1934, 48 Stat. 728, 26 U.S.C.A. Int.Rev.Code § 162, provides that there shall be allowed as a deduction from the income of a trust any part of the gross income, which pursuant to the terms of the will creating the trust, is during the taxable year permanently set aside for charitable purposes, or is to be used exclusively for charitable purposes.

It will be observed that the test laid down by the statute is whether, pursuant to the terms of the will, the income is, in fact, permanently set aside for charitable purposes in the taxable year. In other words, the question is whether an application of the terms of the will to the existing facts does, in fact, permanently set aside the capital gains for charitable purposes. The determination of this question turns on whether we should blindly adhere to the terms of the will which provide for recourse to corpus in the event income is insufficient to pay annuities, or whether we should be realistic and determine the effect of the terms of the will in the light of the amount of the corpus, the income therefrom, and the amount of the annuities. In other words, whether we should give regard to mere theory or to actuality.

The purpose of Congress in enacting § 162 of the Revenue Act of 1934 was to encourage charitable gifts. Like provisions have been judicially construed so as to further and not hinder their beneficent purpose. Lederer v. Stockton, 260 U.S. 3, 8, 43 S.Ct. 5, 67 L.Ed. 99; Old Colony Co. v. Commissioner, 301 U.S. 379, 384, 57 S.Ct. 813, 81 L.Ed. 1169; United States v. Provident Trust Co., 291 U.S. 272, 285, 54 S.Ct. 389, 78 L.Ed. 793. In Lederer v. Stockton, supra, the Supreme Court, in pass-

ing on whether income was received by a corporation operated exclusively for religious, charitable, scientific, or educational purposes, refused to adhere to the technical and formal provisions of a trust, saying, "To allow the technical formality of the trust, which does not prevent the Hospital from really enjoying the income, would be to defeat the beneficent purpose of Congress." In Old Colony Co. v. Commissioner, supra, the Supreme Court refused to narrowly construe § 162 of the Revenue Act of 1928, 45 Stat. 838, 26 U.S. C.A. Int.Rev.Acts, page 405, which is substantially like § 162 of the Revenue Act of 1934, and held that income paid for charitable purposes was deductible, although it was not paid technically pursuant to the terms of the will, giving heed to actualities rather than the strict letter of the will. In United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 392, 78 L.Ed. 793, the court held that in determining the value of a devise to charities, actualities rather than an arbitrary presumption should prevail. [3]

In Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, the will gave the residue of the testator's estate to his wife for life, with authority to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." Sec. 403(a) of the Revenue Act of 1918, 40 Stat. 1098, provides that the value of the net estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or gifts, to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. The question presented was whether the provision for maintenance of the wife made the gifts to charity so uncertain as to render them nondeductible. The court concluded that since the amount payable to the wife was conditioned by a fixed standard laid down in the will which was capable of definite ascertainment, and since the income was sufficient to maintain her under that stan-

---

[3] In the opinion, the court said:

"We have for consideration simply a statutory provision exempting from a prescribed tax the value of all bequests, etc., made to or for the use of charitable organizations and those which are akin, plainly evincing a legislative policy to encourage such bequests. Edwards v. Slocum, 264 U.S. 61, 63, 44 S.Ct. 293, 68

L.Ed. 564. And, in that view, we well may assume that Congress could not have meant to leave its aim to be diverted by a purely arbitrary presumption, which, whether applicable or not to sustain another or different policy, would deny the truth and subvert the policy of this particular legislation."

dard, "There was no uncertainty appreciably greater than the general uncertainty that attends human affairs," and that the gifts were deductible.

In Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710, the testator left a will by which he bequeathed all his estate of over one million dollars to a trustee to pay the income to his wife during her life, and the remainder to certain charities. The will authorized the trustee to pay over to or for the benefit of the wife any part of the principal of the trust fund which it might deem necessary or advisable for her comfortable maintenance and support. The question presented was whether the trustee, in computing the income from the trust estate for the year 1926, was entitled to deduct gains realized on the sale of securities, which gains constituted a part of the corpus of the residuary trust estate, under § 219(b) of the Revenue Act of 1926, 44 Stat. 32, 26 U.S.C.A. Int.Rev.Acts, page 174, the provisions of which are substantially the same as § 162 of the Revenue Act of 1934. The court applied the principle of Ithaca Trust Co. v. United States, supra, and held that if the income was sufficient to support the widow in accordance with her station in life and that it was reasonably certain no resort would be had to the corpus, the income derived from the sale of securities was permanently set aside for charitable purposes. [4]

■ Hartford-Connecticut Trust Co. v. Eaton, supra, was decided December 16, 1929. Since that decision the Congress has re-enacted, without substantial change, the provisions of § 219(b) of the Revenue Act of 1926 in the Revenue Act of 1932, § 162, 47 Stat. 220, in the Revenue Act of 1934, § 162, 48 Stat. 728, in the Revenue Act of 1936, § 162, 49 Stat. 1706, in the Revenue Act of 1938, § 162, 52 Stat. 517, and in the Revenue Act of 1939, § 162, 53 Stat. 66, 26 U.S.C.A. Int.Rev. Code, § 162. The re-enactment of a statute substantially unchanged is persuasive indication of the adoption by the Congress of a prior judicial construction thereof. [5]

Counsel for the Commissioner rely on Boston Safe Deposit & T. Co. v. Commissioner, 1 Cir., 66 F.2d 179. It should be noted that the Board decision in that case and in the instant case were written by the same Board member, and that in determining whether the corpus was permanently set aside for charitable purposes, his approach to the solution of the problem was identical in both cases. In the Boston Safe Deposit case, however, he found that there was a probability under the existing facts that the corpus would be invaded. See 26 B.T. A. 486, 493; 66 F.2d page 185. Whereas, in the instant case he found that the probability of invasion of corpus was so remote as to be negligible. While the court in the Boston Safe Deposit case indicated that it did not fully agree with Hartford-Connecticut Trust Co. v. Eaton, supra, it distinguished that case on the facts by saying [66 F.2d 184], "The District Court * * * found as a fact that there was no reasonable possibility, considering the income of the trust fund, her mode of living, and her own personal estate, that she would ever require, or the trustee be warranted in paying over to her, any part of the principal for her comfortable maintenance and support, and that all of the principal of the trust fund was certain to be used for charitable and educational purposes," and that the Board in the Boston Safe Deposit case had found that the possibility that a part of the principal might be used was not too remote.

■ ■ We, therefore, conclude that the question whether the corpus, including the capital gains, has been permanently set aside for charitable purposes should be determined by a consideration of the provisions of the will in the light of the actual facts respecting the amount of corpus set aside out of which annuities were to be paid, the income derived therefrom, the amount of annuities, and the degree of probability that corpus will be resorted to for annuity payments. The finding of the Board that the probability of the invasion of corpus was so remote as to be negligible

4 See, also, Hartford-Connecticut Trust Co. v. Eaton, D.C.Conn., 41 F.2d 69, decided April 11, 1930; Lucas v. Mercantile Trust Co., 8 Cir., 43 F.2d 39.

5 Bakelite Corp. v. National Aniline & Chem. Co., 2 Cir., 83 F.2d 176, 177; Carroll Electric Co. v. Snelling, 1 Cir., 62 F.2d 413, 416; Sanger v. Lukens, 9 Cir., 26 F.2d 855, 856; Trumbull Steel Co. v. Routzahn, D.C.Ohio, 292 F. 1009, 1011; The Devonshire, C.C.Or., 13 F. 39, 42; In re Pfaeffle, D.C.Tex., 5 F.Supp. 708; United States v. Ryan, 284 U.S. 167, 175, 52 S.Ct. 65, 76 L.Ed. 224; Hecht v. Malley, 265 U.S. 144, 153, 44 S. Ct. 462, 68 L.Ed. 949; Heald v. District of Columbia, 254 U.S. 20, 23, 41 S.Ct. 42, 65 L.Ed. 106.

is amply supported by the evidence. The current fair market value of the assets of the trust is $7,875,653.39. Of that amount $3,607,989.46 is invested in government bonds and notes and municipal bonds. The average annual income from the trust estate for the years 1934 to 1938, inclusive, was $529,414.85. The amount of annuities payable in 1938 was $110,200. Thus, it will be seen that the income was almost five times the amount required for annuity payments. Two of the annuitants have died, one is past 80 years of age, three are past 70 years of age, and two are past 60 years of age. Under accepted tables of life expectancy it is certain that there will be a decrease in the amount of annuity payments in the near future.

We are of the opinion that the evidence established beyond a reasonable doubt that there never will be any recourse to the corpus to pay annuities, and that the corpus was, in fact, permanently set aside in the taxable years for charitable purposes. Accordingly, we conclude that the decision of the Board was correct and it is affirmed.

### No. 2136.

This is a petition of the trustees to review that part of the decision holding the annuity payments not to be deductible.

The theory of the trustees is that since the will provided for resort to corpus if necessary to pay annuities, the annuities constituted a charge upon the corpus of the trust estate which was to go to the Foundation, and that the payment of the annuities freed the corpus from that charge, and, therefore, the annuities were used for charitable purposes. If our conclusion in No. 2135 is correct, this contention must fail. The assertion that the annuities constitute a charge upon the corpus is theoretical, not real. It is practically certain that no resort will ever be had to corpus to pay such annuities. Their payment effects only a theoretical release of a charge upon the corpus. It was clearly the intent of the testator to set aside from the income of the corpus, sufficient thereof to pay the annuities to private individuals. It was never intended that that part of the income should go to charity. The payments made in 1934 and 1935 were to carry out and effectuate that intent and purpose of the will, and we are of the opinion that where there was a mere theoretical discharge of the corpus from the burden of such annuities, it cannot be said that such

annuity payments were used or to be used for charitable purposes within the meaning of § 162(a) of the Revenue Act of 1934. The decision of the Board is affirmed.

BRATTON, Circuit Judge (dissenting).

Deductions from gross income depend upon legislative grace. They do not rest upon equitable considerations. A taxpayer seeking a deduction must found his claim upon a statute and bring himself within its terms. New Colonial Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Commodore Mining Co. v. Commissioner of Internal Revenue, 10 Cir., 111 F.2d 131; Sparkman v. Commissioner of Internal Revenue, 9 Cir., 112 F.2d 774. The asserted claim of this taxpayer is not sustainable unless it finds its genesis in a statute.

Section 23(o) (2) of the Revenue Act of 1934, 48 Stat. 680, provides that in computing the net income of an individual a deduction shall be allowed for any contribution or gift made to a corporation, trust, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation; and section 162(a) provides that the net income of an estate or trust shall be computed in the same manner and on the same basis as that of an individual, except that in lieu of the deduction authorized by section 23(o), there shall be allowed as a deduction any part of the gross income which pursuant to the terms of the will or deed creating the trust is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o) or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes. The Bonfils Foundation is a charitable corporation within the meaning of the statute. But the plain language of the statute makes it clear that in order for the income of the trust to be deductible as a contribution to charity, it must be by the express terms of the will paid to or permanently set aside during the taxable year for a corporation organized and operated exclusively for charitable purposes. Stated otherwise, to be deductible the in-

strument must make it clear that it was the intention of the creator of the trust that the income should be either actually paid to charity during the taxable year or permanently set aside to it during such year.

The will of this decedent provides that profits resulting from the sale of any part of the estate shall be credited to principal, and shall not be deemed income; it also provides that in the event the net income from the trust estate is insufficient to pay all of the annuities in full, such additional amounts as may be required from time to time shall be paid out of the corpus of the trust estate; and it further provides that after the death of the last survivor of the annuitants, the trustees are authorized and directed, upon written demand of the foundation, to pay to the foundation from time to time all or such part of the corpus of the trust estate as may be reasonably required for the financing of any project or projects of the foundation, undertaken pursuant to the terms of the will, and that all of such corpus shall be paid over and delivered to the foundation within ten years after the death of the last survivor of the annuitants. These provisions must be considered together. Considered in that manner, they make it plain that the decedent intended that capital gains should be added to the corpus of the trust estate; that in the event the income should be insufficient from time to time to pay in full the annuities, enough of the corpus should be used to pay the deficiency; and that the corpus should be disbursed to the foundation after the death of the last survivor of the annuitants, and not before. By the terms of the will, capital gains become a part of the corpus, the entire corpus is subject to the charge of the annuities whenever ordinary current income is insufficient for that purpose, and the corpus is to be and remain subject to that charge until the death of the last survivor of the annuitants. The primary purpose is payment in full of the annuities. To that purpose the corpus is dedicated whenever the ordinary income is not enough. True, the dedication is contingent, but the corpus is dedicated to that purpose. The secondary purpose is payment of the corpus to the foundation, after all of the annuities have been paid in

full—that is, after the death of the last survivor of the annuitants. It cannot be said that by the terms of the will the capital gains which became a part of the corpus of the trust estate were set aside during the years 1934 and 1935 for the exclusive use of the Foundation. Boston Safe Deposit & Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 66 F.2d 179, certiorari denied, 290 U.S. 700, 54 S.Ct. 227, 78 L.Ed. 602. Up to the present the ordinary, annual income of the trust estate has far more than sufficed to pay the current annuities, and it seems reasonably certain that it will continue to do so in the future. Still, it cannot be foretold with absolute certainty that such condition will always exist to the death of the last survivor of the annuitants. The decedent had the right to and perhaps did take many factors into consideration in providing in the will that capital gains be added to the corpus, that the corpus be liable for the payment of the balance of the annuities after current income had been exhausted, and that the entire corpus be contingently subject to that use and purpose until after the death of the last survivor of the annuitants. In any event, he had the right to make the dedication in that manner, and for reasons satisfactory to himself he did so.

The majority state that the question is "whether we should blindly adhere to the terms of the will which provide for recourse to corpus in the event income is insufficient to pay annuities, or whether we should be realistic and determine the effect of the terms of the will in the light of the amount of the corpus, the income therefrom, and the amount of the annuities. In other words, whether we should give regard to mere theory or to actuality." But the statute does not commit to the realistic views of the court the question whether on equitable or other kindred considerations a deduction shall be allowed in a case of this kind. Instead, it provides in clear and unmistakable terms that the deduction shall be allowed only when by the terms of the will or deed creating the trust the sum is during the taxable year either paid to or permanently set aside for a charitable purpose. The court should give effect to that congressional mandate.